IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PNC MORTGAGE | : | |
| *(A DIVISION OF PNC BANK, N.A.)* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-5084 |
| SUPERIOR MORTGAGE | : | |
| CORPORATION, ET AL. | : | |

<u>**MEMORANDUM**</u>

**SURRICK, J.**                                                    **FEBRUARY   27 , 2012**

Presently before the Court is Plaintiff PNC Mortgage's Motion for Leave to Amend

Complaint.  (ECF No. 35.)  For the following reasons, Plaintiff's Motion is granted in part, and

denied in part.

**I.      BACKGROUND**

In this unfair competition action between two mortgage companies, Plaintiff PNC

Mortgage ("PNC"), successor by merger to National City Mortgage ("National City"), brings

numerous claims against Defendants Superior Mortgage Corporation ("Superior"), John Coneys

and Marc Pollicino.  Coneys and Pollicino were the former managers of National City's Plymouth

Meeting, Pennsylvania, and Marlton, New Jersey branches.  After PNC and National City merged

in late 2008, Plaintiff began to institute structural changes to their Mortgage Division.  As part of

its restructuring initiatives, Plaintiff centralized the loan processing and underwriting functions

into two locations, changed the compensation structure of branch managers such that they no

longer would earn commissions on loans they originated, and changed the lending requirements

for PHA loans.  In mid-2009, around the time that the restructuring initiatives occurred, many

branch managers and loan officers in National City's Eastern Division resigned and took employment with competitors.

Coneys and many of the loan officers and assistants in the Plymouth Meeting branch left National City to work for Superior.  Pollicino and many of his loan officers and assistants in the Marlton branch also joined Superior.  Plaintiff alleges that around the time of their departure from National City, some of the Marlton and Plymouth Meeting employees misappropriated confidential customer lists, loan documents, customers and other confidential information. Plaintiff further alleges that Superior played a role in recruitment of National City's employees with an intent to harm National City.  Ultimately, National City was forced to shut down the Marlton and Plymouth Meeting branches.

Plaintiff filed the instant Complaint on November 4, 2009.  (Compl.)  Plaintiff asserts the following claims:  breach of contract against Pollicino and Coneys (Count I); misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. § 5301, *et seq.* ("PUTSA"), and New Jersey common law, against all Defendants (Count II); conversion against all Defendants (Count III); breach of fiduciary duty against Pollicino and Coneys (Count IV); unfair competition against all Defendants (Count V); tortious interference with contract against Superior (Count VI); tortious interference with contract against all Defendants (Count VII); aiding and abetting against Superior (Count VIII); a claim under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") against Coneys (Count IX); civil conspiracy against all Defendants (Count X); and vicarious liability against Superior (Count XI).  (Compl.)

Plaintiff filed a Motion for a Preliminary Injunction on November 12, 2009.  (Pl.'s Mot. Prelim. Inj., ECF No. 2.)  On January 13, 2010, the parties entered into a Consent Preliminary

Injunction Order ("Consent Order").  (ECF No. 33.)  The Consent Order required Defendants to "return any and all confidential information taken from or received from plaintiff that is in their or Superior's possession, custody or control . . . ."  (*Id.* at 1.)  The Consent Order also preliminarily enjoined Defendants from engaging in any solicitation of Plaintiff's customers who had not also been a customer of Superior (*id.* at 2) and from soliciting any revenue-producing employees of Plaintiff or its successors (*id.* at 4).

Plaintiff filed the instant Motion.  Defendant Superior filed a response in opposition to the Motion.  Plaintiff filed a reply.  Defendants Coneys and Pollicino did not file responses to the Motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) requires that leave to amend the pleadings be granted freely "when justice so requires."  *See also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility" means that the "complaint, as amended, would fail to state a claim upon which relief could be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)**.**

## III.   DISCUSSION

Plaintiff moves for leave to amend the Complaint to allege additional facts, add two additional counts, and add two of the named Defendants to an already existing Count. Specifically, Plaintiff seeks to add the following paragraphs to the Complaint:

3

27.     Before leaving employment with National City, several of the employees hired away by Superior downloaded information from National City's computer to external storage devices such as thumb drives that were not approved National City devices.  After leaving employment with National City to go to Superior, at least one former National City employee entered the Plymouth branch and accessed a substantial number of files on a National City laptop.

60.     In addition, Pollicino's right hand woman, Tara Moran, resigned from National City on or about July 24, 2009.  At the time that Ms. Moran left National City, Pollicino remained employed by National City.  Although Ms. Moran did not advise National City where she was going to work when she left National City, National City subsequently learned that she went to work for Superior.

a.      On July 27, 2009, Ms. Moran connected her National City laptop to Superior's local area network.  That same day, an external storage device, capable of holding 250 gigabytes of data, was connected to the National City laptop assigned to Ms. Moran.  The storage device was six times larger than the hard drive capacity of the computer.  At the time Ms. Moran did this, she knew she had to return her National City laptop to the company's headquarters because her employment with National City had ended.

b.      On June 25, 2009, one month before she left National City, Ms. Moran sent two e-mails to Pollicino with large attachments that contained customer lists.

(Pl.'s Mot. Ex. A)

Based on these additional allegations, Plaintiff seeks to add Pollicino and Superior to

Count IX of the Complaint, which asserts a claim under the CFAA.  In addition, Plaintiff seeks to

add two additional counts to the Complaint:  (1) a claim for violation of the New Jersey Computer

Related Offices Act ("CROA"), N.J.S.A. §§ 2A:38-1, *et seq.*, against Pollicino and Superior; and

(2) conspiracy to violate the CFAA, under 18 U.S.C. § 1030(b), against Coneys and Pollicino.

An amendment is futile if the pleading, as amended, would fail to state a claim upon

which relief could be granted.  *Shane*, 213 F.3d at 115.  We therefore turn to whether Plaintiff has

4

stated a claim upon which relief could be granted under the CFAA and under CROA.

**A.      CFAA**

Count IX is a claim for violation of the CFAA.  The Complaint names only Coneys as the Defendant.  Plaintiff seeks to add Pollicino and Superior as additional Defendants to this Count. Although initially intended as a criminal statute that penalized computer hacking activities, the CFAA explicitly authorizes civil actions under certain circumstances.  *See* 18 U.S.C. § 1030(g); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 510 (3d Cir. 2005).  The CFAA prohibits seven types of conduct with respect to accessing computers without authorization.  *See* 18 U.S.C. § 1030(a)(1)-(7).  Plaintiff's allegations are based upon 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), 1030(a)(5).  Those sections state:

(a) Whoever –

. . .

(2) intentionally access a computer without authorization or exceeds authorized access, and thereby obtains –
(A) information contained in a financial record of a financial institution . . .

. . .

(C) information from any protected computer;

. . .

(4) knowingly and with the intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . .

. . .

(5) . . . (c) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a).  Defendant also asserts a claim under § 1030(b), which punishes the act of conspiring to commit an offense in violation of the CFAA.

To establish a claim under the CFAA, Plaintiff must also show that it sustained "damage or loss" as a result of the violation, under § 1030(g).  That section states in relevant part:

> Any person who suffers damage or loss by reasons of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for violation of this section may be brought only if the conduct involves 1 of the facts set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A).  Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g).  The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  *Id.* at § 1030(e)(8).  The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  *Id.* at § 1030(e)(11).

"Courts have held that to fall within this definition, 'loss' must be related to the impairment or damage to a computer or computer system."  *Eagle v. Morgan*, No. 11-4303, 2011 U.S. Dist. LEXIS 147247, at *23 (E.D. Pa. Dec. 22, 2011) (citing cases).  Loss means the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable.  *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. 09-2751, 2010 U.S. Dist. LEXIS 113215, at *23 (E.D. Pa. Oct. 22, 2010).

Here, Plaintiff does not allege any loss that is compensable under the CFAA.  Rather, Plaintiff alleges that it has suffered loss in an amount in excess of $5,000, and that it is suffering immediate and irreparable harm "in the form of lost customers, lost customer relationships and

other injuries." (Compl. ¶ 128.) This type of harm is not sufficient to state a claim under the CFAA. *See Advantage Ambulance Grp., Inc. v. Lugo*, No. 08-3300, 2009 U.S. Dist. LEXIS 26465, at *12-13 (E.D. Pa. Mar. 30, 2009) (dismissing claim under the CFAA because Plaintiff's allegation that it suffered lost revenues as a result of dissemination of its trade secrets was not a "loss" under the Act); *Crown Coal & Coke Co. v. Compass Point Res., LLC*, No. 07-1208, 2009 U.S. Dist. LEXIS 52949, at *19-20 (W.D. Pa. June 23, 2009) ("Defendants, however, are not claiming to have lost money because their computers were inoperable. Rather, they are claiming to have been denied potential business opportunities as a result of [the defendant's] unauthorized access. This alleged loss of business opportunities is simply not compensable under the CFAA.").

Plaintiff's claim would be dismissed under a motion to dismiss standard. *See Bansal v. Russ*, 513 F. Supp. 2d 264, 279 (E.D. Pa. 2007) (dismissing claim under the CFAA because plaintiff failed to allege that a compensable economic loss was caused by a violation of the Act). Accordingly, Defendant's motion to amend to assert a claim under the CFAA must be denied as futile. Because Plaintiff fails to state a claim under the CFAA, Plaintiff also fails to state a claim for conspiracy to violate the CFAA. Thus, Plaintiff's Motion is also denied for failure to state a conspiracy claim since such claim would be futile.

### B.    CROA

Plaintiff also seeks to amend the Complaint to add a claim under CROA against Pollicino and Superior.

The New Jersey Computer Related Offenses Act, N.J. Stat Ann. § 2A:38A-3, provides:

A person or enterprise damaged in business or property as a result of any of the following actions may sue the *actor* therefore in the Superior Court and may

recover compensatory and punitive damages as the cost of the suit, including a
reasonable attorney's fee, costs of investigation and litigation:

    a.    The purposeful or knowing, and unauthorized altering, damaging, taking
or destruction of any data, data base, computer program, computer
software or computer equipment existing internally or externally to a
computer, computer system or computer network…."

. . .

    c.    The purposeful or knowing, and unauthorized accessing or attempt to
access any computer, computer system or computer network.

N.J.S.A. 2A:38A-3 (emphasis added).

Thus, CROA imposes liability against an "actor" whose "purposeful or knowing" conduct is proscribed by the statute. Although the term "actor" is not defined within the act, "each subsection of [the Act] is independent of the other and each subsection requires that the conduct by the actor be 'purposeful and knowing.'" *Fairway Dodge, L.L.C. v. Decker Dodge, Inc.*, 924 A.2d 517, 523 (N.J. 2007). Plaintiff alleges that in the Marlton branch office, Tara Moran, Pollicino's assistant, connected her National City laptop to the Superior local server three days after she resigned from National City. Plaintiff further alleges that on that same day, an external storage device was connected to the National City laptop. Finally, Plaintiff alleges that one month before she left National City, Moran sent two emails to Pollicino with large attachments containing customer lists.

Based on these facts, in addition to the facts alleged in the Complaint, Plaintiff's claim under CROA would be futile. First, the fact that Moran sent two emails to Pollicino while she was still employed at National City is not actionable because there is no indication that access on this date was not "authorized." Moran was still employed with National City on this date. Plaintiff has alleged no facts indicating that Moran's "access" and transfer of customer

information to Pollicino, who also was still employed at National City at the time, was otherwise improper.

Second, the fact that Moran connected her National City laptop to the Superior server three days after resigning from National City similarly fails to state a claim. Although the conduct was "unauthorized" as Moran was no longer employed with National City and was required to turn in her National City laptop upon resignation, there are no facts that show that any data or information was taken when she connected a storage device to her laptop or when she connected her laptop to the Superior server. *See P.C. Yonkers*, 428 F.3d at 509 (affirming denial of injunctive relief on CROA claim where the plaintiff offers no proof that any information was taken after accessing the computer without authority). This is simply not sufficient to sustain a claim under CROA. *Id.* (stating that "no proof of conduct other than access" to the computer dooms a claim under CROA).

In addition, Plaintiff asserts the claim against Pollicino and Superior; however, based on the facts Plaintiff alleges, neither Pollicino nor Superior were the "actor" for purposes of the Act. *See* N.J. Stat Ann. § 2A:38A-3 ("A person or enterprise damaged in business or property as a result of any of the following actions may sue the *actor* therefor . . . ."); *see also Fairway Dodge*, 924 A.2d at 522 (noting that the Appellate Division concluded that the meaning of the word "actor" was crucial in that the only liable parties under the Act were those that actually accessed, altered, damaged, or destroyed computer information).[1]

---

[1] The New Jersey Supreme Court ultimately held that the plaintiff's claim under CROA could not be established, but on different grounds. *Fairway Dodge*, 924 A.2d at 521. The Court found that it was not necessary to define the word "actor" to decide the appeal. Nevertheless, we believe that a plain reading of the statute supports the conclusion that the New Jersey legislature intended that the statute covered only those "actors" who directly accessed the computer at issue.

Accordingly, Plaintiff has failed to state a claim under CROA, and thus, amending the Complaint to assert a CROA claim would be futile.  The Motion will be denied on this basis.

We will permit Plaintiff to amend the Complaint to add the additional allegations contained in Paragraphs 37 and 60.  We believe that these paragraphs, although they do not support the additional claims asserted in Plaintiff's Motion to Amend, may be relevant to support the other Counts in the Complaint.  We will deny the Motion to add the two additional Counts, proposed Counts XI and XII, and to add Pollicino and Superior to Count IX.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff PNC Mortgage's Motion for Leave to Amend Complaint will be granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**

10